1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Richard Charles Tuccio,                    )
                                           )   No. CV-12-0565-TUC-DCB-DTF
             Petitioner,                   )
                                           )   **REPORT AND RECOMMENDATION**
vs.                                        )
                                           )
Charles L. Ryan, et al.,                   )
                                           )
             Respondents.                  )
                                           )
_____)

Petitioner Richard Tuccio has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. In accordance with the Rules of Practice of the Court, this matter was referred to Magistrate Judge Ferraro for Report and Recommendation. Before this Court are the Petition (Doc. 1) and Respondents' Answer (Doc. 12). The Magistrate Judge recommends that the District Court, after its independent review of the record, dismiss the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was convicted of one count of kidnaping, domestic violence; one count of sexual assault; and one count of burglary in the second degree. (Doc. 12, Ex. B.) He was given three concurrent sentences, the longest of which is 10.5 years. (*Id.*, Ex. D.) The convictions were based on the following facts, as summarized by the trial court:

> Ms. Zarate was first to testify and she stated that on February 28, 2009, she had text messaged Petitioner and made plans to attend a family cookout for Petitioner's family member that night. Ms. Zarate decided that she no longer wanted to attend and, when she let Petitioner know, he became upset. Ms. Zarate told Petitioner that she was going to a nightclub with a friend. Ms. Zarate went to the nightclub and left a little after 12:00 a.m. She then went to a friend's house and initially called Petitioner for a ride home but ended up being driven home by her neighbor. Petitioner did not live in Ms. Zarate's

apartment at the time of the incident and she had taken back his key to her apartment approximately one month prior to the incident.

Ms. Zarate arrived at her apartment around 3:45 a.m. Petitioner was lying in wait and, as soon as Ms. Zarate opened her front door, Petitioner began yelling and tackled her. She fell into the living room of her apartment, landing on her back with Petitioner on top of her, holding her down with both hands around her neck and putting the rest of his body weight on top of her. Petitioner continued yelling at her and calling her derogatory names. Ms. Zarate told him to stop and let him know that there were children in the house. At this point, Petitioner dragged Ms. Zarate into her bedroom, dropping her onto the floor before getting on top of her by straddling her waist. Petitioner began hitting her on the face, pulling her hair and then held her down by her neck. Petitioner bit Ms. Zarate on her face, pulled her denim jeans and underwear completely off of her body, and then stuck his fingers inside her vagina.

Alma Aguirre, who is hearing-impaired, was asleep in the same bedroom where this incident was occurring and woke up to find Petitioner and Ms. Zarate struggling. Ms. Zarate asked Ms. Aguirre for a phone and Ms. Aguirre threw her a telephone. Ms. Aguirre testified that she observed that Ms. Zarate had no clothes on below her waist, was crying, and had purple bruises by her mouth and by her eye. Ms. Aguirre also stated that Petitioner appeared to be very angry and was yelling.

Once Ms. Zarate received the telephone from Ms. Aguirre, she called 911 and reported that she was being hurt. At this point, Petitioner took the phone away from her and disconnected the call. Ms. Zarate tried to exit her bedroom but Petitioner blocked her bedroom door, so she went into the bathroom connected to her bedroom. Petitioner stood by the door and held the door with his foot so she could not close it. Petitioner eventually let her out of the bathroom and, after she told him she was going to call the police, he turned around and walked away. Ms. Zarate followed him out the front door and closed it behind him. She then called the police.

Detective Marquez testified about the injuries she observed on Ms. Zarate and testified about the photographs she had taken of the victim's injuries on the night of the incident. She found that the injuries depicted in the photographs were consistent with Ms. Zarate's account of what had happened the night of the incident.

(Doc. 12, Ex. K at 1-2.)

Tuccio filed an appeal, which was denied by the Arizona Court of Appeals. (*Id.*, Exs. E, F.) He subsequently filed a pro se petition for post-conviction relief (PCR). (*Id.*, Ex. J.) The PCR court denied his ineffective assistance of counsel claims on the merits and found other claims precluded because they could have been or were raised on appeal. (*Id.*, Ex. K.) Petitioner filed a motion for rehearing. (*Id.*, Ex. L.) The PCR court found no basis to reconsider the denial of the claims previously raised, and found claims newly raised barred

1    for failure to raise them in his initial PCR petition. (*Id.*, Ex. M.) Petitioner sought review in

2    the court of appeals, which was granted but relief was denied. (*Id.*, Exs. N, O.) The Arizona

3    Supreme Court denied review. (*Id.*, Ex. P.)

4                                    **DISCUSSION**

5         Respondents do not dispute the timeliness of the petition and concede that Claims 1,

6    2 and 4 are exhausted. (Doc. 12 at 9.) Respondents argue that the entirety of Claim 3 is

7    procedurally defaulted. The Court first evaluates exhaustion regarding Claim 3 and then

8    considers the merits of the exhausted claims.

9         **EXHAUSTION AND PROCEDURAL DEFAULT REGARDING CLAIM 3**

10        **Principles of Exhaustion and Procedural Default**

11        A writ of habeas corpus may not be granted unless it appears that a petitioner has

12   exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v.*

13   *Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present"

14   the operative facts and the federal legal theory of his claims to the state's highest court in a

15   procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999);

16   *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

17        In Arizona, there are two primary procedurally appropriate avenues for petitioners to

18   exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas

19   petitioner's claims may be precluded from federal review in two ways. First, a claim may be

20   procedurally defaulted in federal court if it was actually raised in state court but found by that

21   court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a

22   claim may be procedurally defaulted if the petitioner failed to present it in state court and

23   "the court to which the petitioner would be required to present his claims in order to meet the

24   exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S.

25   at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the

26   district court must consider whether the claim could be pursued by any presently available

27   state remedy). If no remedies are currently available pursuant to Rule 32, the claim is

28

1    "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see*
2    *also Gray*, 518 U.S. at 161-62.

3          Because the doctrine of procedural default is based on comity, not jurisdiction, federal
4    courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*,
5    468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally
6    defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly
7    exhaust the claim in state court and prejudice from the alleged constitutional violation, or
8    shows that a fundamental miscarriage of justice would result if the claim is not heard on the
9    merits in federal court. *Coleman*, 501 U.S. at 750.

10         **Analysis**

11         Petitioner argues (a) trial counsel was ineffective for failing to advise him of a plea
12   offer; and (b) the trial court abused its discretion by denying Petitioner a hearing on this issue
13   of ineffective assistance of counsel (IAC). As to subpart (a), he further asserts he only found
14   out about the plea when given notice that the state was withdrawing it and remembered he
15   was previously shown something that might have been a plea deal but he wasn't given any
16   time to consider it before his counsel took it away.

17         In his first PCR petition, Tuccio argued that counsel failed to conduct an adequate
18   investigation to advise and assist him in making an informed decision on the plea offer versus
19   going to trial (Tuccio raises this claim in the federal petition as Claim 1(b)). (Doc. 12, Ex.
20   J at 9-15.) The PCR court denied this claim on the merits. (*Id.*, Ex. K at 5.) In a motion for
21   rehearing, Petitioner argued for the first time that his counsel failed to review the terms of
22   the plea offer with him. (*Id.*, Ex. L at 8.) The PCR court denied reconsideration. (*Id.*, Ex. M.)
23   In his petition for review to the court of appeals, Tuccio argued a combination of Claims 1(b)
24   and 3(a) regarding the plea offer. (*Id.*, Ex. N at 10.) The appellate court granted review but
25   denied relief, adopting the PCR court's ruling on the PCR petition. (*Id.*, Ex. O.)

26         Petitioner failed to fairly present this claim to the PCR court because it was not
27   included in his PCR petition. A petitioner must include all known grounds for relief in his
28   petition, and a motion for rehearing only provides an avenue for a petitioner to raise errors

1   made by the PCR court in ruling on the claims included in the original PCR proceeding. Ariz.

2   R. Crim. P. 32.5, 32.9(a). New claims are not properly included in a motion for rehearing.

3   *See State v. Bonnell*, 831 P.2d 434, 437 n.3, 171 Ariz. 435, 438 n.3 (Ct. App. 1992) (citing

4   *State v. Ramirez*, 616 P.2d, 924, 927, 126 Ariz. 464, 467 (Ct. App. 1980)). In his habeas

5   petition, Tuccio asserts this claim was raised in a "second petition." (Doc. 1 at 10.) It appears

6   he is conceding that he raised it for the first time in his motion for rehearing as he did not file

7   a second PCR petition. Thus, Petitioner failed to fairly present this claim in a procedurally

8   appropriate manner to the state courts.

9       If Petitioner were to return to state court now to litigate this claim it would be found

10  waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal

11  Procedure because it does not fall within an exception to preclusion. Ariz. R. Crim. P.

12  32.2(b); 32.1(d)-(h). This claim is technically exhausted but procedurally defaulted.[1]

13      Petitioner did not argue cause and prejudice or a fundamental miscarriage of justice

14  to overcome the default of this claim. Subpart (a) should be dismissed on procedural grounds.

15      In subpart (b), Petitioner argues the trial court refused to conduct a hearing on his IAC

16  claim, presumably during the PCR proceeding when he raised his IAC claims. Petitioner can

17  only raise claims in his federal habeas petition based on a violation of the United States

18  Constitution or federal law. 28 U.S.C. § 2254(a). Petitioner has not asserted a federal claim

19  as to this subpart, therefore, it is not cognizable before this Court. Further, alleged errors in

20  the PCR process are not cognizable in a federal habeas corpus proceeding because they do

21  not attack the lawfulness of Petitioner's detention. *See Franzen v. Brinkman*, 877 F.2d 26,

22  _____

23      [1]   Further, the PCR court found the claims raised for the first time in the petition for
    rehearing barred for failure to raise them during the initial PCR proceeding. (Doc. 12, Ex.

24  M at 1-2.) The PCR court noted Petitioner had raised numerous new claims and
    "[s]pecifically, Petitioner argues several new reasons he believes his trial counsel was

25  ineffective, including . . . ." (*Id.* at 1.) This claim was not listed by the PCR court, however,
    the Court's use of the word "including" indicates the list was not exclusive and that all new

26  claims were barred. The appellate court adopted this ruling (*Id.*, Ex. O at 2 n.1.) Thus, this
    claim, alternatively, is procedurally defaulted on the ground that the state court found it

27  barred on a state law ground.

28

26 (9th Cir. 1989) (per curiam) (finding allegations of error in state post-conviction review process non-cognizable); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997). Subpart (b) should be dismissed as non-cognizable.

### MERITS ANALYSIS OF CLAIMS 1, 2 AND 4

### Legal Standard for Relief under the AEDPA

The Antiterrorism and Effective Death Penalty Act (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists

1  of the holdings of the Supreme Court at the time the petitioner's state court conviction

2  became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

3        The Supreme Court has provided guidance in applying each prong of § 2254(d)(1).

4  The Court has explained that a state court decision is "contrary to" the Supreme Court's

5  clearly established precedents if the decision applies a rule that contradicts the governing law

6  set forth in those precedents, thereby reaching a conclusion opposite to that reached by the

7  Supreme Court on a matter of law, or if it confronts a set of facts that is materially

8  indistinguishable from a decision of the Supreme Court but reaches a different result.

9  *Williams*, 529 U.S. at 405-06; *see Early v. Packer,* 537 U.S. 3, 8 (2002) (per curiam).

10       Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court

11 may grant relief where a state court "identifies the correct governing legal rule from [the

12 Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or

13 "unreasonably extends a legal principle from [Supreme Court] precedent to a new context

14 where it should not apply or unreasonably refuses to extend that principle to a new context

15 where it should apply." *Williams*, 529 U.S. at 407.  For a federal court to find a state court's

16 application of Supreme Court precedent "unreasonable," the petitioner must show that the

17 state court's decision was not merely incorrect or erroneous, but "objectively unreasonable."

18 *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25.

19       Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state

20 court decision was based upon an unreasonable determination of the facts.  *Miller-El v.*

21 *Dretke*, 545 U.S. 231, 240 (2005) (*Miller-El II*).  In considering a challenge under

22 § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner

23 bears the "burden of rebutting this presumption by clear and convincing evidence."  28

24 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

25       **Analysis**

26       Claim 1 includes two subparts, each of which allege ineffective assistance of trial

27 counsel. Claim 2 alleges the trial court violated his right to present a defense. Claim 4 alleges

28 ineffective assistance of appellate counsel.

1       Ineffective Assistance of Counsel Standard

2           There is a Sixth Amendment right to effective assistance of counsel at trial and on

3   appeal. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387,

4   396 (1985). The standards for ineffective assistance of counsel (IAC) claims are set forth in

5   *Strickland*. To prevail under *Strickland*, a petitioner must show that counsel's representation

6   fell below an objective standard of reasonableness and that the deficiency prejudiced the

7   defense. 466 U.S. at 687-88.

8           The inquiry under *Strickland* is highly deferential, and "every effort [must] be made

9   to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

10  challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

11  at 689. Thus, to satisfy *Strickland*'s first prong, deficient performance, a defendant must

12  overcome "the presumption that, under the circumstances, the challenged action might be

13  considered sound trial strategy." *Id.*

14          Because an IAC claim must satisfy both prongs of *Strickland*, the reviewing court

15  "need not determine whether counsel's performance was deficient before examining the

16  prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697 ("if it

17  is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice

18  . . . that course should be followed"). A petitioner must affirmatively prove prejudice. *Id.* at

19  693. To demonstrate prejudice, he "must show that there is a reasonable probability that, but

20  for counsel's unprofessional errors, the result of the proceeding would have been different.

21  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

22  *Id.* at 694.

23      Claim 1(a)

24          Petitioner alleges trial counsel provided ineffective assistance when he failed to

25  investigate available evidence of his actual innocence. Petitioner raised this claim in his pro

26

27

28

se PCR petition.[2] (Doc. 12, Ex. J at 9-15.) The PCR court denied this claim, finding counsel did not perform ineffectively nor was Petitioner prejudiced:

> Petitioner first claims that his trial counsel provided ineffective assistance for not interviewing potential witnesses to the incident. Petitioner states that the person who drove Ms. Zarate home just before the incident occurred and Ms. Zarate's neighbors should have been interviewed because they would have corroborated what Petitioner claims happened that night. The evidence overwhelmingly indicates that the majority of the incident took place inside the apartment. The witnesses Petitioner claims should have been interviewed would not have provided any relevant information regarding what happened inside the apartment.

(Doc. 12, Ex. K at 4, 5.)

Petitioner has failed to establish that he was prejudiced by counsel's alleged failure. He submitted no evidence, or even allegations, during his PCR proceeding as to what testimony any of these potential witnesses had to offer. As pointed out by the PCR court, the victim testified that Petitioner immediately pushed her inside the apartment, where the remainder of the incident occurred. Petitioner did not aver that anyone witnessed his arrival at the apartment or the outside interactions between him and the victim. Because there is no evidence that the persons Tuccio names as potential witnesses possessed any relevant or exculpatory information, he has failed to establish that if counsel had investigated further there is a reasonable likelihood the outcome of his trial would have been different.

The PCR court's denial of this claim was not an objectively unreasonable application of *Strickland*.

Claim 1(b)

Petitioner argues trial counsel failed to provide him timely review of discovery material that would have allowed him to make an informed decision on whether to accept the plea offer. Petitioner raised this claim in his pro se PCR petition. (Doc. 12, Ex. J at 9-15.) The PCR court denied this claim, finding counsel did not perform ineffectively nor was Petitioner prejudiced:

---

[2]   Petitioner does not include any additional facts in his petition, therefore, the Court has before it only the allegations as raised in his PCR petition. These assertions are adequately summarized by the PCR court, as quoted above.

1
2
3
4

> Petitioner largely bases this claim on his allegation that his counsel failed to fully investigate his case by not interviewing potential witnesses. At the case management conference on May 14, 2009, Mr. Plowman avowed to the Court that he had gone over the terms of the plea agreement with Petitioner and that it was Petitioner's choice not to take the plea agreement offered. Petitioner has failed to state specific reasons he was not adequately informed of the plea agreement.

5 (*Id.*, Ex. K at 5.) The ruling was adopted by the appellate court. (*Id.*, Ex. O.)

6       Petitioner has not proffered any evidence, or even allegations, regarding what
7 information counsel should have provided to allow him to make an informed decision about
8 the plea offer. Tuccio asserts counsel should have contacted the victim's neighbors and his
9 family as possible witnesses to his version of the events that evening. As discussed above,
10 there is no evidence the victim's neighbors witnessed the events and possessed relevant
11 information. Similarly, no members of Petitioner's family were present with him outside or
12 inside the apartment and, therefore, would not possess any critical evidence regarding the
13 crimes.[3] Finally, as pointed out by the PCR court, during a pretrial conference at which
14 Petitioner was present, counsel represented that he had reviewed the plea with Petitioner and
15 he had decided not to accept it. (Doc. 12, Ex. Q at 3-4.) Petitioner has not refuted that
16 representation nor established that because he lacked critical information he was precluded
17 from making an informed decision about the plea agreement. Thus, he has not established
18 that counsel's performance was deficient.

19       To establish prejudice, Petitioner has to show a reasonable probability that the
20 outcome of the plea process would have been different with competent advice from counsel.
21 *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). More specifically, he must establish that he
22 would have accepted the plea, it would not have been withdrawn by the prosecution, the
23 court would have accepted its terms and conviction and/or sentence would have been less

24 _____

25   [3]   Petitioner may believe his family possessed information about his intent in going to
26 the victim's apartment. He emphasized in the fact section of the PCR petition that he was not
guilty of burglary because he did not go to the victim's apartment in order to commit a
27 felony. (Doc. 12, Ex. J at 3, 5). Petitioner fails to take into account the court's instruction to
the jury on the elements of burglary which included not only entering, but also **remaining**
28 unlawfully in, a residential structure with the intent to commit a felony. (*Id.*, Ex. T at 29.)

1    severe the that imposed after trial. *Id.* at 1385. Petitioner has failed to establish any of these
2    elements. Most importantly, he has not averred that if counsel had provided him additional
3    information and advice he would have accepted the plea deal. To the contrary, in the PCR
4    petition, Tuccio argues that when a defendant has no chance of being acquitted at trial, there
5    is prejudice per se. (Doc. 12, Ex. J at 14.) This highlights Petitioner's failure to prove actual
6    prejudice. The PCR court's denial of this claim was not objectively unreasonable.

7          Claim 2

8          Petitioner alleges the trial court violated his right to due process and right to put on
9    a defense when it precluded the testimony of his mother, Margie Ayala. He alleges Ayala
10   would have testified that the victim was an alcoholic and that she was intoxicated when she
11   testified at the preliminary hearing. Petitioner argues this evidence was relevant because it
12   would have impeached the victim's credibility about her ability to remember and perceive
13   accurately the events in question, and it showed bias and a motive to lie.

14         Petitioner raised this claim on direct appeal. (Doc. 12, Ex. E.) The court of appeals
15   denied the claim, finding that the evidence was properly excluded as irrelevant:

16         Evidence that R. had been intoxicated in the past was not relevant to her
           credibility with respect to the events that gave rise to these charges and the
17         convictions. In particular, whether she was intoxicated at the preliminary
           hearing might have been relevant to her credibility at that time, but was not at
18         all relevant here because she testified at trial. As the state correctly argued at
           the hearing on its motion, R.'s alleged intoxication at the preliminary hearing
19         would be relevant only if the state were to use the transcript from that hearing
           at trial, which it did not do. The state conceded the relevance of the evidence
20         that R. had been intoxicated when the events occurred, but it was anticipated
           the victim would admit she had been drinking that night, which she did.

21
                 . . . .
22
                 Similarly, Tuccio's contention that his constitutional rights were
23         violated by the trial court's preclusion of this evidence, which he raises for the
           first time on appeal, fails as well. He has established no constitutional violation
24         occurred, particularly given the fact that defense counsel had the opportunity
           to cross-examine the victim extensively. Additionally, as we have stated, the
25         court's preclusion of the evidence is supported by the applicable rules of
           evidence. There was no error, much less error that could be characterized as
26         fundamental, prejudicial error.

27
     (*Id.*, Ex. F at 4.)
28

                                           - 11 -

1    The erroneous exclusion of critical, corroborative defense evidence can violate a

2    defendant's due process right to a fair trial and to present a defense. *DePetris v. Kuykendall*,

3    239 F.3d 1057, 1062 (9th Cir. 2001) (citing *Chambers v. Mississippi*, 410 U.S. 284, 294

4    (1973)). Here, the decision to exclude the evidence does not rise to a due process violation

5    because the evidence was not relevant to Petitioner's defense. As explained by the PCR

6    court, whether the victim was intoxicated at the preliminary hearing was irrelevant to the

7    night of the crime and her trial testimony. Similarly, whether she abused alcohol on a regular

8    basis did not meaningfully bear on her testimony regarding the night in question. At trial,

9    defense counsel was allowed to explore the victim's alcohol consumption on the night of the

10   crime. The victim testified that she had 6 to 8 beers that night. (Doc. 12, Ex. S at 106-07,

11   131-32.)

12   Petitioner also argues that the exclusion of Ayala's testimony denied him his right to

13   confront his accuser. Petitioner's counsel cross-examined the victim about how much she had

14   to drink on the night in question. (*Id.*, Ex. S at 131-32, 136.) There is no indication the trial

15   court limited his ability to cross-examine the victim on her intoxication that night.

16   The PCR court's denial of this claim was not an objectively unreasonable application

17   of Supreme Court law.

18   <u>Claim 4</u>

19   Petitioner argues appellate counsel provided ineffective assistance when he failed to

20   argue there was insufficient evidence to support Tuccio's convictions.[4] The PCR court denied

21   this claim finding there was "substantial evidence supporting the jury's conviction of

22   Petitioner." (Doc. 12, Ex. K at 5.) On petition for review, the appellate court  adopted the

23   PCR court's ruling denying the claim. (*Id.*, Ex. N at 6, Ex. O at 2-3.)

24

25

----

26   [4]   Petitioner also may be arguing that appellate counsel failed to present available

27   information from outside the record to establish Tuccio's innocence. To the extent that is part
     of his claim it is not exhausted and it is meritless as appellate counsel is limited to presenting

28   record-based claims.

Arizona courts evaluate a sufficiency of the evidence claim by asking "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Cox*, 174 P.3d 265, 269, 217 Ariz. 353, 357 (2007) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The Court has read the trial transcripts and, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found Tuccio guilty of the three crimes of which he was convicted. Therefore, counsel's failure to raise this claim was not deficient. *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (holding failure to raise a meritless argument does not constitute ineffective assistance). Further, Petitioner cannot establish prejudice because there is not a reasonable probability that Tuccio would have obtained relief on appeal. First, based on its review of the evidence and the governing law, this Court has determined the change did not have a reasonable probability of succeeding on the merits. Second, the PCR court found the claim to be without merit because there was substantial evidence supporting the verdicts. The Arizona Court of Appeals adopted that decision. In light of the appellate court's determination – that a claim of insufficient evidence would not have been successful if raised to that court on direct appeal – this Court cannot find that Petitioner was prejudiced by counsel not raising the claim. The state court's denial of this claim was not an unreasonable application of *Strickland*.

## RECOMMENDATION

Claim 3(a) is procedurally defaulted and Claim 3(b) is not cognizable. Claims 1, 2 and 4 fail on the merits. Based on the foregoing, the Magistrate Judge recommends the District Court DISMISS the Petition for Writ of Habeas Corpus (Doc. 1).

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If

1   objections are not timely filed, they may be deemed waived. If objections are filed, the

2   parties should use the following case number: **CV 12-565-TUC-DCB**.

3   　　　　DATED this 22nd day of October, 2013.

D. Thomas Ferraro
United States Magistrate Judge